CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2016 JAN 22  AM 9: 28

DEPUTY CLERK_____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KHAWLA ABU NEJMEH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-816-BL |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Khawla Abu Nejmeh seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied her application for social security income (SSI) under Title XVI of the Social Security Act (Act). The United States District Judge reassigned the case to this Court pursuant to 28 U.S.C. § 636(c). The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this Court recommends the decision of the Commissioner be affirmed and this case be dismissed.

### I. STATEMENT OF THE CASE

Plaintiff protectively filed her application SSI on February 21, 2012, alleging disability beginning on February 1, 2012. Her application was denied initially July 3, 2012, and again on reconsideration November 5, 2012. Plaintiff requested a hearing, which was held before an Administrative Law Judge (ALJ) on November 20, 2013. The ALJ issued an opinion on February 28, 2014, finding Plaintiff not disabled.

More specifically, the ALJ found at step one that Plaintiff had not engaged in any

substantial gainful activity since the application date. At step two, the ALJ found Plaintiff had, "the following medically determinable impairments: lumbar degenerative disc disease; hypertension; diverticulitis with colitis; anxiety; and depression." Tr. 21. However, the ALJ found that none of these impairments, singly or in combination, was severe under the regulations. Tr. 22. Therefore, the ALJ's evaluation stopped prior to step three, and Plaintiff was found to be not disabled. Tr. 26.

Plaintiff appealed to the Appeals Council, which denied review on June 20, 2014. Therefore, the third ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

## II. FACTUAL BACKGROUND

According to her pleadings and testimony at the administrative hearing, Plaintiff was sixty-two years old and married at the time of the administrative hearing. She was born in Palestine, where she proceeded through the seventh grade in school. She moved to the United States in 1993. She applied for U.S. citizenship, but claims she failed to meet the qualifications because she cannot read, write, or speak English. Since she has been in the U.S., Plaintiff has had no substantial gainful employment.

Plaintiff complains of physical impairments involving her back and her abdomen, as well as the mental impairments of depression and anxiety. She alleges her physical and mental impairments render her disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if she is unable "to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2013).

To evaluate a disability claim, the Commissioner follows "a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing [he] is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309

F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the Court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the Court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

Plaintiff raises two arguments on appeal. She claims the ALJ made a faulty severity finding at step two, and she claims the Appeals Council improperly denied review.

### A. Step Two Severity

At step two, the ALJ must determine whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1991). The Court of Appeals for the Fifth Circuit in *Stone v. Heckler*, "set out the correct legal standard to use for determining 'nonseverity,' and held that it will be assumed that the wrong standard was applied unless the correct standard is set forth by reference to [*Stone*] or another [judicial opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit] gives is used." *Lynch v. Shalala*, 19 F.3d 14 (5th Cir. 1994) (internal quotation marks omitted) (*per curiam*); *see Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (5th Cir. 1985) (internal quotation marks omitted). The

Fifth Circuit has made clear, however, there is no requirement for the "use of 'magic words' for compliance with *Stone*." *Lynch*, 19 F.3d 14 (citing *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986)). A court will remand "only where there is *no indication* the ALJ applied the correct legal standard." *Id.* (internal quotation marks omitted) (emphasis added).

> The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs. Examples of these are walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting. Thus, these basic work factors are inherent in making a determination that an individual does not have a severe medical impairment.

SSR 85-28, 1985 WL 56856 (1985).

In this case, the ALJ examined whether Plaintiff could perform basic work activities. If Plaintiff could perform basic work activities, then her ability to work was not interfered with, and therefore any impairments from which Plaintiff suffered were not "severe" under the law. Tr. 21–26. The ALJ quoted the examples of basic work activities listed in the regulations, then discussed evidence in the record that addressed Plaintiff's ability to perform most, if not all, of these basic work activities.

In terms of Plaintiff's physical ability to stand, sit, lift, push, pull, reach, carry, or handle, the ALJ noted Plaintiff's own testimony that she was "able to cook, clean, take care of her disabled son, take care of her personal needs, go outside once a day, ride a bicycle, use public transportation, shop, handle money, watch television, spend time with others, go to the mosque, get along with others, and finish what she starts, among other things." Tr. 21. Additionally, the ALJ canvassed the objective medical evidence in the record to discover the extent to which Plaintiff's allegations of her limitations at the administrative hearing were credible. Tr. 22–26. For example, the ALJ

noted, "medical records prior to February of 2012 show a history of sporadic emergency treatment for complaints like chest pain, abdominal pain, nausea, shortness of breath, dizziness, acid reflux, etc. For instance, the claimant presented to the emergency department in February of 2011 with complaints of shortness of breath, nausea, vomiting, dizziness, and ringing in her ears. She said all symptoms began 1 hour after eating, and that she had experienced similar episodes in the past when she gets anxious. However, extensive testing and examinations were all essentially normal." Tr. 23.

On another occasion, the ALJ stated,

> Generally speaking the claimant sought emergency/urgent treatment for episodes of acute abdominal pain approximately every 1–2 months throughout 2012. However, examinations were usually normal from both a physical and mental perspective, and the claimant's symptoms quickly improved with treatment every time. In fact, a colonoscopy in April of 2012 was normal and an abdominal ultrasound performed on August 3, 2012 was negative. On January 11, 2013, a hepatobiliary scan showed no suggestion of acute cholecystitis, with a gallbladder ejection fraction of 41% (lower range of normal). Progress notes from June of 2012 indicate that the claimant did not follow up with a gastroenterologist as instructed. They also show that a colonoscopy in June of 2012 was normal. Furthermore, treatment records demonstrate that, against medical directives, the claimant continued to smoke cigarettes.

Tr. 24. These and other examples of discrepancies between the objective medical findings and test results led the ALJ to conclude that while Plaintiff did suffer from some medically determinable impairments; "however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." Tr. 23.

In terms of the capacity to see, hear, and speak, the Vocational Expert (VE) provided expert testimony relating to such. The ALJ asked the VE, "[c]an you give me some light and unskilled jobs which can be performed by somebody who's illiterate and unable to communicate in English?" Tr. 39. The VE proceeded to provide the ALJ with three positions that in her expert opinion were performable by Plaintiff, despite Plaintiff's restrictions in terms of the English language: hand packer, assembler, and inspector. Tr. 38–40. Thus, it is plain that the ALJ discussed Plaintiff's ability to perform several basic work activities. The ALJ found that Plaintiff had not more than mild restrictions as to these activities, and therefore her ability to work was not interfered with under the Act. Accordingly, Plaintiff's impairments were not severe under the Act. Of particular relevance, the ALJ succinctly stated: "Treatment records do not suggest more than mild limitation in activities of daily living, social functioning or concentration, persistence or pace, and there is no evidence of any episodes of decompensation." Tr. 21.

Furthermore, it is undisputed that the ALJ explicitly set out the appropriate *Stone* standard. Tr. 22; *see* Pl.'s Reply Br. 3. That Plaintiff is able to point to one alleged opinion in the record which claims Plaintiff's limitations are severe does not mean the ALJ erred in finding Plaintiff's limitations not severe. Pl.'s Reply Br. 3. It is the province of the ALJ, not the courts, to consider all opinions in the record and assign them weight. *Masterson*, 309 F.3d at 272 ("'Conflicts in the evidence are for the Commissioner and not the courts to resolve.'").

The Court finds the ALJ properly "set forth by reference" the correct *Stone* standard, and conducted an acceptable analysis in accordance with such standard. Plaintiff's allegations to the contrary are unavailing.

### B. Appeals Council Review

If an ALJ issues a decision unfavorable to a claimant, the claimant may appeal such

7

decision to the Appeals Council. *See* 20 C.F.R. § 416.1479. The Appeals Council may accept and consider new evidence obtained even after issuance of the ALJ's decision. *See, e.g., Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994). The regulations discuss the criteria the Appeals Council applies to each case in deciding whether to grant or deny appeal.

> The Appeals Council will review a case if—(1) There appears to be an abuse of discretion by the [ALJ]; (2) There is an error of law; (3) The action, findings or conclusions of the [ALJ] are not supported by substantial evidence; or (4) There is a broad policy or procedural issue that may affect the general public interest.

20 C.F.R. § 416.1470(a). The regulations go on to state:

> In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. In reviewing decisions other than those based on an application for benefits, the Appeals Council shall evaluate the entire record including any new and material evidence submitted. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

*Id.* § 404.1470(b). "For new evidence to be material, there must exist the 'reasonable possibility that it would have changed the outcome of the Secretary's determination.'" *Latham*, 36 F.3d at 483 (quoting *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)).

> After it has reviewed all the evidence in the administrative law judge hearing record and any additional evidence received, subject to the limitations on Appeals Council consideration of additional evidence in §§ 416.1470(b) and 416.1476(b), the Appeals Council will make a decision or remand the case to an administrative law judge. The Appeals Council may affirm, modify or reverse the administrative law judge hearing decision or it may adopt, modify or reject a recommended decision. If the Appeals Council issues its own decision, it will base its decision on the preponderance of the evidence.

20 C.F.R. § 416.1479; *see* 20 C.F.R. § 404.979; *see also Hamilton-Provost v. Colvin*, 605 F.App'x 233, 239 (5th Cir. 2015) (*per curiam*) ("The Appeals Council has broad authority to modify the ALJ's decision."). The Appeals Council, just like the ALJ, has the task of assigning weight to medical opinions of record and it, not the Court, is responsible for resolving any conflicts in the

8

evidence. *See Brown v. Astrue*, No. 3:10-CV-00275-O-BK, 2010 WL 3895509, at *5 (N.D. Tex. Sept. 13, 2010) (citing 20 C.F.R. § 404.1527) (noting the Appeals Council "follow[s] the same rules for considering medical opinion evidence as ALJs follow"); *Newton*, 209 F.3d at 452 ("Conflicts in the evidence are for the Commissioner and not the courts to resolve") (internal quotation marks omitted). Meaning, the Appeals Council, like "[t]he ALJ[,] is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton*, 209 F.3d at 455. Furthermore, "[b]ased on its internal procedures, the Appeals Council need not provide a detailed discussion about all new evidence submitted to it." *Brown*, 2010 WL 3895509, at *5.

Here, Plaintiff states he submitted to the Appeals Council answers to interrogatories written by Kweli J. Amusa, M.D. *See* Tr. 557–60. Plaintiff asserts these answers constitute a medical opinion which contradicts the severity conclusion reached by the ALJ. Pl.'s Br. 9–11. The Court notes that prior to answering the questions posed by Plaintiff's counsel in the interrogatory, Dr. Amusa never examined Plaintiff; instead Dr. Amusa reviewed Plaintiff's paper records.

Specifically, Plaintiff's counsel posed the following question to Dr. Amusa:

> Based upon your review, does Ms. Abu Nejmeh suffer from any "severe" medically-determinable impairment, or combination of impairments" A "non-severe" impairment is defined as "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. If so, please list each one below."

Tr. 557 (emphasis and quotation marks in original). To that question, Dr. Amusa wrote:

> 1) Abdominal pain/chronic constipation, with intermittent bouts of diverticulitis/colitis, with significant emotional overlay – frequent ER visits and occas (sic) hospitalizations: 4F/14, 18, 4F/25, 28, 3F/13, 16, 4F/47, 3F10, 3F/6, 10F/9, 4F/63, 19F/2, 10F/14, 10F/34, 19F/40, 45, 53, 58.
> 2) OA/DDB: 18F/3, 19F/11, 10F/29, 7F/8, 19F/17, 25, 22, 38.

Tr. 557.

It is uncontested that the Appeals Council had these answers to interrogatories before it

when considering Plaintiff's case following the issuance of the ALJ's decision. *See* Pl.'s Reply Br. at 4; Def.'s Br. at 13. It is further uncontested that the Appeals Council recited applicable regulations setting forth the criteria which would necessitate review. *See* Tr. 1 (listing the factors found in 20 C.F.R. § 416.1470(a)).

First, without making any finding as to the veracity of the wording of the severity question in Plaintiff's interrogatories, the Court simply notes such question is drafted in a not entirely clear manner. It annunciates a standard for severity that does not entirely track with *Stone's* standard. *Compare* Tr. 557 ("A 'non-severe' impairment is defined as 'an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.'"), *with Stone*, 752 F.2d at 1101 ("An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.").

Furthermore, Plaintiff cites to no authority to support the proposition that Dr. Amusa's answers were anything more than an opinion whose weight was to be adjudged by the Commissioner. *See, e.g., Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) (noting that an ALJ may in certain circumstances assign little weight or no weight to the opinion of a treating physician, much less a non-treating physician, or, like Dr. Amusa, a reviewing physician—the most removed from a patient of all the physicians). The Appeals Council recited the appropriate rules it was required to consider in determining whether to grant appeal, then explicitly stated: "We found no reason under our rules to review the [ALJ's] decision. Therefore, we have denied your request for review." The Court finds no infirmity with the decisions of the Appeals Council or the ALJ. That Plaintiff is dissatisfied with such decisions is understandable, but not persuasive.

The decisions of the Commissioner are supported by substantial evidence. *See Perales*, 402 U.S. 389. As such, the Commissioner's decision is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

## V. CONCLUSION

Considering the foregoing, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED**.

Dated January 21, 2016.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE